**IT IS ORDERED as set forth below:**

**Date: October 25, 2018**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-59963-JWC |
| JOSEPH ANTHONY JANKAUSKAS, | CHAPTER 13 |
| Debtor. | |

## ORDER

This matter is before the Court on the Chapter 13 Trustee's Motion to Disburse Garnishment Proceeds (Doc. No. 30) (the "Motion") filed by Nancy J. Whaley, Standing Chapter 13 Trustee (the "Trustee") in the above-styled chapter 13 case (the "Bankruptcy Case") of Joseph Anthony Jankauskas ("Debtor"). The Trustee seeks direction on how to disburse $24,090.37 of garnished funds (the "Garnished Funds" or "Funds") she currently holds in connection with the Bankruptcy Case. Legacy Chemical Corporation ("Legacy"), a creditor of the Debtor, filed a

response (Doc. No. 32) (the "Response") requesting that the Trustee disburse the Funds either directly to Legacy or to either of two different state courts in which garnishment proceedings initiated by Legacy were pending at the time the Motion was filed. Debtor filed no response to the Motion.

The Court held a hearing on the Motion on September 18, 2018 (the "Hearing"). The Trustee, counsel for Legacy, and counsel for Debtor all appeared at the Hearing. The Court ruled at the Hearing that it would direct the Trustee to return the Funds to the State Court of Gwinnett County (the "Gwinnett Court"), which held the Funds on the date the Bankruptcy Case was filed. Both the Trustee and counsel for Legacy agreed that disbursement to the Gwinnett Court was an acceptable option. Debtor took no position on how the Funds should be disbursed. The Court further indicated at the Hearing its concern that Legacy had initiated garnishment proceedings against the Trustee to recover the Funds without first seeking leave of the Court. The Court now enters this order in accord with its oral ruling at the Hearing and to address its concerns regarding the garnishment filed against the Trustee.

**I.     BACKGROUND**

Debtor filed his Bankruptcy Case on June 14, 2018 (the "Petition Date"). On the Petition Date, a garnishment action filed by Legacy against Debtor was pending in the Gwinnett Court, Case No. 18-GC-01763-S0 (the "Gwinnett Garnishment Action"). The Gwinnett Court held the Garnishment Funds in its registry on the Petition Date. In the normal course of business, the Trustee received a letter from the Gwinnett Court notifying the Trustee that the Gwinnett Court held the Garnished Funds in its registry. The Trustee requested that the Gwinnett Court remit the Funds to her, which it did by check received by the Trustee on August 23, 2018.

2

During the Bankruptcy Case Debtor filed a motion to retain the Garnished Funds, which Legacy opposed. An amended motion and further response and briefings followed. Before the Court could hear the motion to retain, however, the Court dismissed the Bankruptcy Case by order entered August 29, 2018, as a result of Debtor's failure to fund his chapter 13 plan. Debtor also failed to appear at two scheduled 341 meetings and the confirmation hearing.

On the same day the Court dismissed the Bankruptcy Case, Legacy filed a second garnishment action in Fulton County (the "Fulton Garnishment Action") seeking to garnish the Funds held by the Trustee. The Court has little information regarding the Fulton Garnishment Action other than it was filed, Legacy served a summons on the Trustee, and the Trustee filed a response. Legacy also apparently filed a garnishment against counsel for the Debtor, though it is unclear if such garnishment is a part of, or separate from, the Fulton Garnishment Action.

Given the size of the Funds held by the Trustee, the Fulton County Garnishment Action, and the pleadings filed by Debtor seeking to retain the Garnished Funds, the Trustee filed the instant Motion seeking direction from the Court on how she should disburse the Garnished Funds in final administration of this dismissed Bankruptcy Case.

The Trustee expressed a preference at the Hearing that she be directed by the Court to write checks to specific parties, whether it be Legacy or Debtor, and not send the Funds back to the Gwinnett Court because she believed the Gwinnett Garnishment Action had been closed. She was not opposed, however, to returning the Funds to the Gwinnett Court if directed by the Court. Legacy obviously prefers that the Funds be disbursed directly to it but also suggested returning the Funds to the Gwinnett Court as the next-best option available to the Court. Counsel for Legacy also indicated that the Gwinnett Garnishment Action is still open and pending and available to receive the Funds. Both the Trustee and Legacy offered a third option of allowing the Fulton

3

Garnishment Action to proceed in its normal course, though neither the Trustee nor Legacy preferred that option. Specifically, the Trustee expressed concern that allowing a garnishment action against her to proceed would subject her to an undue burden in responding to garnishment actions by creditors every time a case is dismissed. Counsel for Debtor had no position at the Hearing on disbursement of the Funds, requesting only that any garnishment proceeding against Debtor's counsel be dismissed as counsel holds no funds. After making its oral ruling at the Hearing that the Court would direct the Trustee to return the Funds to the Gwinnett Court, counsel for Legacy indicated that he would dismiss the Fulton Garnishment Action against the Trustee and any garnishments against counsel for Debtor.

## II. ANALYSIS

### A. Jurisdiction

The Court agrees with both the Trustee and Legacy that it has jurisdiction to direct where the Funds should be paid following dismissal of the Bankruptcy Case as it affects the final administration of the estate. *See* 28 U.S.C. §§ 157 and 1334; *In re Doherty*, 229 B.R. 461, 463-65 (Bankr. E.D. Wash. 1999).

### B. The Funds Should Be Disbursed to the Gwinnett Court

This case presents a common fact pattern with a couple of twists. The Court dismissed Debtor's Bankruptcy Case prior to confirmation of a plan, leaving the Trustee with funds on hand that must now be disbursed to someone, a common occurrence in chapter 13 cases. In this Court alone hundreds of chapter 13 cases are dismissed every year before a plan is confirmed. In many of these cases (but certainly not all) the Trustee holds at the time of dismissal some amount of money received by her during the pendency of the case. Most of the time, such funds come directly

4

from the debtor pursuant to 11 U.S.C. § 1326(a)(1)(A),[1] which requires a debtor to commence proposed plan payments to the chapter 13 trustee not later than 30 days after the earlier of the order for relief or the filing of a plan. The Bankruptcy Code specifically contemplates what should become of such funds. Section 1326(a)(2) provides that in cases where no plan is confirmed, any funds paid to the trustee pursuant to § 1326(a)(1)(A) and not already disbursed or otherwise owed to creditors by an order of the Court should be returned to the debtor after deducting any unpaid administrative claims allowed under § 503(b). Most of the time disbursement of funds pursuant to § 1326(a)(2) works relatively smoothly following the dismissal of a case, though complications certainly arise periodically.

The first twist presented by this case is that the Trustee did not receive the Funds from Debtor pursuant to § 1326(a)(1)(A). Instead, the Funds came directly from the Gwinnett Court, which held the Funds in its Registry on the Petition Date in connection with the Gwinnett Garnishment Action. Section 1326(a)(2) says nothing about funds received by a chapter 13 trustee that were not paid by the debtor pursuant to § 1326(a)(1)(A), and the Court is not aware of any other section of chapter 13 that instructs how such funds should be disbursed upon dismissal of a chapter 13 case in which no plan has been confirmed. Without any specific guidance offered by chapter 13 regarding disbursal of the Funds, the Court agrees with Legacy that § 349(b) controls disbursal of the Funds upon dismissal. *Cf. In re Hamilton*, 493 B.R. 31, 34-37 (Bankr. M.D. Tenn. 2013) (citing cases and finding § 349(b) applies after dismissal to (i) funds received after confirmation and (ii) funds received before confirmation but not otherwise falling under specific language of § 1326(a)(2)).

---

[1] All further statutory references shall be to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

Section 349(b) provides as follows:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . .
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b). "The objective of section 349(b) is to undo the title 11 case, insofar as practicable, and to restore all property rights to the position they occupied at the beginning of such case." 3 COLLIER ON BANKRUPTCY ¶ 349.01[2] (Richard J. Levin & Henry J. Sommer eds., 16th ed.). Dismissal "aims to return to the prepetition financial status quo." *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 984, 197 L. Ed. 2d 398 (2017); *Lawson v. Tilem (In re Lawson)*, 156 B.R. 43, 45 (9th Cir. B.A.P. 1993) ("Dismissal of a case operates to reinstate the status of the interests of the debtor and his creditors to their status quo ante."). Here, the Gwinnett Court held the Funds in its registry on the Petition Date. The Court can think of no better way to put the parties back into their respective prepetition positions than to return the Funds to the Gwinnett Court.

Legacy asks that the Funds be distributed directly to it because the Funds vested in it prior to the Petition Date. Legacy argues it fulfilled all requirements under Georgia garnishment law to entitle Legacy to the Funds and all that remained to be done in the Gwinnett Garnishment Action was for the Gwinnett Court to pay the Funds to Legacy. While that could be the case, the Court does not have a sufficient record before it to make any determination regarding the status of the Gwinnett Garnishment Proceeding and who might be entitled to the Funds in that proceeding. Further, Legacy's counsel acknowledged at the Hearing that some additional administrative steps may be needed in the Gwinnett Garnishment Action before the Funds can be paid to Legacy. Thus, the Court does not find that the Funds vested in Legacy prior to the Bankruptcy Case for purposes of § 349(b). Nor does the Court find that the Funds were vested in the Debtor, who has presented

6

no argument or evidence that the Funds were vested in him when he filed the Bankruptcy Case. It is unclear to the Court if funds held in the registry of a court are "vested" in such court for purposes of § 349(b), but given the positions of the parties and the lack of any argument to the contrary, the Court finds on the facts of this case that cause exists[2] to disburse the Funds to the Gwinnett Court. The Gwinnett Court held the Funds immediately prior to the Bankruptcy Case, and there they will return. With the Bankruptcy Case dismissed, the parties are restored to their prepetition positions *vis-à-vis* the Funds and the Gwinnett Garnishment Action. Legacy is free to take whatever actions it deems appropriate in the Gwinnett Garnishment Action to recover the Funds from that court, subject to any defenses the Debtor may have.

### C.      The Fulton Garnishment Action Violates the Barton Doctrine

The Court now turns to the second twist presented by this case: the Fulton Garnishment Action. Garnishment of funds held by chapter 13 trustees following dismissal appears to be relatively rare compared with the volume of chapter 13 cases that are dismissed before completion. It does occur occasionally, however, and a substantial body of case law has developed addressing whether chapter 13 trustees must honor such garnishments, at least in the context of funds that are subject to § 1326(a)(2). Case law is sharply divided on the issue.

Legacy cites to a number of cases for the proposition that once a case is dismissed, funds held by a chapter 13 trustee are subject to garnishment[3] the same as any other entity holding funds

---

[2] Legacy also argues in the Response that Debtor's bad faith in this case constitutes cause pursuant to § 349 to "order otherwise" and rule that the Funds should go directly to Legacy. The Court does not find such cause exists. Even if the case was filed in bad faith, it is not clear to the Court based on the record before it that Legacy is entitled to the Funds such that cause would dictate the Funds be paid directly to Legacy.

[3] Note that many of the cases cited herein do not involve "garnishments" specifically, but rather involve similar efforts by creditors to seize control of property in the possession of a trustee pursuant to state or federal law. For instance, several of the cases cited herein involve levy by the IRS or state agencies pursuant to federal or state statute. Other cases might involve state or federal attachment proceedings similar to traditional garnishments. This order will generally use the word "garnishment" in much of its analysis and discussion because many of the concepts analyzed

that are owed to a debtor.  *See, e.g., Beam v. I.R.S. (In re Beam)*, 192 F.3d 941 (9th Cir. 1999); *Commonwealth of Mass. v. Pappalardo (In re Steenstra)*, 307 B.R. 732, 738 (1st Cir. B.A.P. 2004); *In re Fischer*, 432 B.R. 863, 865 (M.D. Fla. 2010); *In re Brown*, 280 B.R. 231 (Bankr. E.D. Wis. 2002); *Clark v. Commercial State Bank*, No. NO–00–CA–140, 2001 WL 685529 (W.D. Tex. April 16, 2001); *In re Doherty*, 229 B.R. 461, 463 (Bankr. E.D. Wash. 1999); *In re Mishler*, 223 B.R. 17 (Bankr. M.D. Fla. 1998); *In re Schlapper*, 195 B.R. 805, 806 (Bankr. M.D. Fla. 1996).  All but one of these cases involved funds held by the trustee after dismissal that were subject to § 1326(a)(2).[4]  The basic reasoning of these and similar cases is that once the case is dismissed the automatic stay and estate terminate; a chapter 13 trustee becomes a "debtor to the debtor" to the extent of any funds that are due to be returned to the debtor; § 1326(a)(2) is not an absolute mandate that requires funds be returned to the debtor in all circumstances; nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure prevents garnishment of a trustee once the automatic stay and estate terminate; therefore, the funds held by the trustee after dismissal that are due to the debtor are subject to garnishment the same as any other entity holding funds owed to the debtor.  At the Hearing, Legacy's counsel indicated that these cases, understandably, led him to the conclusion that the Fulton Garnishment Action was not only proper but prudent given the possibility that the Funds might be distributed directly to Debtor, nullifying Legacy's previous efforts in the Gwinnett Garnishment Action.

---

in the case law apply across the various types of attachment efforts.  However, there are differences that are relevant to the Court's analysis, and this order applies specifically to garnishment proceedings under Georgia law.  The order attempts to specify, where relevant, key differences between garnishment under Georgia law and other types of attachment, garnishment, levy, or similar process.

[4] In the case where § 1326(a)(2) did not specifically apply, the order of dismissal directed the trustee to return funds to the debtor.  *See In re Mishler*, 223 B.R. at 19.

8

Legacy did not cite, however, at least an equal number of cases holding the opposite: if § 1326(a)(2) applies, funds held by a chapter 13 trustee are not subject to garnishment following dismissal. *See, e.g., Commonwealth of Va. v. Baskin*, 581 B.R. 162 (W.D. Va. 2017); *In re Locascio*, 481 B.R. 285 (Bankr. S.D.N.Y. 2012); *In re Sexton*, 397 B.R. 375 (Bankr. M.D. Tenn. 2008); *In re Inyamah*, 378 B.R. 183 (Bankr. S.D. Ohio 2007); *In re Davis*, 2004 WL 3310531 (Bankr. M.D. Ala. 2004); *In re Bailey*, 330 B.R. 775 (Bankr. D. Or. 2005); *In re Oliver*, 222 B.R. 272 (Bankr. E.D. Va. 1998). The basic reasoning of these cases is that the plain language of § 1326(a)(2) mandates that funds subject to that section must be distributed to the debtor upon dismissal (after payment of administrative expenses), and the Bankruptcy Code generally preempts any obligation under non-bankruptcy law to pay such funds to a party other than as directed by the Bankruptcy Code. Several of these cases also note the administrative burden that would be placed on chapter 13 trustees and the "race to the trustee" that would follow any dismissal of a case if trustees are subject to garnishment the same as any other "debtor of the debtor." *E.g.*, *In re Davis*, 2004 WL 3310531 at *2.

In all of the above-cited cases, on both sides of the divide, the analysis largely depends on whether the court views § 1326(a)(2) as a mandate that funds must be returned to the debtor, thereby preempting any non-bankruptcy garnishment laws. Some courts view § 1326(a)(2) to be preemptive; some courts do not.[5] In courts where § 1326(a)(2) is considered preemptive, a trustee apparently may ignore any garnishment served on it following a dismissal. In courts where §

---

[5] In cases where the creditor is the IRS seeking to levy under federal levy statutes, courts have found that the federal levy statutes may control over any contrary directive found in the Bankruptcy Code. *See, e.g., In re Beam*, 192 F.3d 944-45 (finding that only property specifically exempted in 26 U.S.C. § 6334 is excluded from levy power of IRS, and § 1326(a)(2) is not specifically exempted); *In re Pruitt*, Case Nos. 07–31620, 07–10877, 2008 WL 2079145, *2 (Bankr. M.D. Ala. May 15, 2008) (harmonizing federal levy statute and § 1326(a)(2) and finding funds held by trustee may be levied if owed to debtor unless specifically exempted by federal levy statute).

9

1326(a)(2) is not preemptive, a trustee must apparently honor any valid garnishment served on it after dismissal of the bankruptcy case.  Because § 1326(a)(2) is not applicable in this case, the Court need not cast its ballot in the § 1326(a)(2) preemption debate.  The Court could endeavor to answer the preemption question as it pertains to the facts of this case, § 349(b), and Georgia garnishment law, but answering that question is not necessary because the Court believes a broader threshold issue applies:  the Fulton Garnishment Action violates the *Barton* Doctrine.

It is well-established in the Eleventh Circuit and other circuits that the *Barton* Doctrine requires a party to obtain leave of the bankruptcy court before initiating an action in any non-bankruptcy court against a bankruptcy trustee for acts done in the trustee's official capacity.  *See, e.g., Carter v. Rogers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (citing cases); *In re Linton,* 136 F.3d 544, 546 (7th Cir.1998).  In *Rogers*, the Eleventh Circuit discussed the source and reasoning behind the Barton Doctrine:

> "An unbroken line of cases ... has imposed [this] requirement as a matter of federal common law." *Linton,* 136 F.3d at 545. In so holding, these circuit courts have applied the rule referred to as the "*Barton* doctrine." *See id.* The Supreme Court in *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881), stated that "[i]t is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." *Barton* involved a receiver in state court, but the circuit courts have extended the *Barton* doctrine to lawsuits against a bankruptcy trustee. In *Linton,* the Seventh Circuit explained the reasons behind its application of the *Barton* doctrine to a bankruptcy trustee, as follows: "The trustee in bankruptcy is a statutory successor to the equity receiver, and ... [j]ust like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." 136 F.3d at 545.
> In addition, the policy behind this leave of court requirement was well-stated by the Seventh Circuit:
>
>> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.... Without the requirement [of leave], trusteeship will become a more

10

> irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive.... Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively.
>
> *Linton,* 136 F.3d at 545.

*Rogers*, 220 F.3d at 1252-53. The *Barton* Doctrine is jurisdictional in nature and prevents a non-bankruptcy court from exercising subject matter jurisdiction over unauthorized suits against a trustee. *See Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (a court does not have "jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action ... based on his negligence or that of his servants in the performance of their duty in respect of [the property administered by the receiver]" (citing *Barton v. Barbour*, 104 U.S. 126, 127 (1881))); *McDaniel v. Blust*, 668 F.3d 153, 156 (4th Cir. 2012) ("The Supreme Court established in *Barton* that before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver."). The Eleventh Circuit has applied *Barton* expansively, extended its protections not only to bankruptcy trustees, but other officers approved by a bankruptcy court, including trustee's counsel, investigators hired by a trustee, and even lenders of court-approved financing used by a trustee to recover assets for a bankruptcy estate. *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009). The Eleventh Circuit also construes narrowly the statutory exception to *Barton* found in 28 U.S.C. § 959(a).[6] Because the doctrine is designed to discourage burdensome lawsuits against trustees that would

---

[6] 28 U.S.C. § 959(a) provides that "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." There is no question that Trustee was not carrying on any business with respect to the Funds.

11

impede their work for the court (not merely protect assets of the estate) and to protect "the integitry of bankruptcy jurisdiction," the *Barton* Doctrine extends beyond dismissal of a bankruptcy case. *See Linton*, 136 F.3d at 545; *Muratore v. Darr,* 375 F.3d 140, 147 (1st Cir. 2004). Thus, even though the automatic stay and related doctrine of *custodia legis*[7] might not apply to funds held by a trustee once a bankruptcy case is dismissed, the *Barton* Doctrine continues to apply to suits against a trustee that might otherwise interfere with her ability to perform her duties.

To the Court's surprise, none of the cases cited by Legacy that allow garnishment of a trustee reference *Barton* at all. Indeed, few cases analyzing whether a trustee may be garnished address the *Barton* Doctrine.[8] The Court's research, however, revealed a few cases in which courts found *Barton* to apply to garnishments filed against a trustee. Most closely on point is the case of *In re Shields*, 431 B.R. 446 (Bankr. S.D. Ind. 2010), in which the bankruptcy court found that § 1326(a)(2) did not preempt state garnishment law upon dismissal. The court, however, also applied *Barton* to find that "[t]he Trustee should not be required to defend against or otherwise appear in state court each time he is served with a garnishment order." *Id.* at 449. Other courts

---

[7] *See Steenstra* 307 B.R. at 740 (*custodia legis* protects property in possession or control of a court from levy or attachment of any kind but no longer applies to property in possession of trustee once bankruptcy case is dismissed).

[8] In the Court's review of extant case law, there are two basic scenarios in which a trustee might be served with a garnishment:  1) by a creditor of the debtor upon dismissal of a chapter 13 case (as is the case here); and 2) by a creditor of an estate creditor during the pendency of a bankruptcy case so that the creditor can grab funds from the trustee before such funds are distributed to the estate creditor. As discussed already, most of the cases in the first scenario analyze whether § 1326(a)(2) preempts the non-bankruptcy garnishment law without addressing *Barton*. Most cases in the second scenario similarly do not address *Barton*, but generally will allow garnishment so long as there is no burden to the estate and the trustee does not object to honoring the garnishment. *See, e.g., Brickell v. Dunn (In re Brickell),* 142 Fed. Appx. 385, 389 (11th Cir. 2005) (unpublished) (finding no *per se* ban on garnishment of funds held by chapter 7 trustee so long as it does not "unnecessarily complicate the administration of the bankruptcy estate" and where trustee did not object to complying with garnishment); *In re Kranich*, 182 Fed. 849 (E.D. Pa. 1910) (allowing garnishment against bankruptcy trustee "purely ex gratia" where trustee did not object and finding that trustee could not be required to honor garnishment over trustee's objection); *In re Chakos*, 36 F.2d 776 (W.D. Wis. 1930) (bankruptcy court had discretion and as a matter of extension of grace to allow garnishment against trustee where no effect on administration of estate); *but see In Re American. Elec. Tel. Co.*, 211 F. 88, 91 (7th Cir. 1914) (court may not allow garnishment against trustee); *In re Ocean Downs Racing Ass'n, Inc.*, 164 B.R. 249 (Bankr. D. Md. 1993) (no authority to allow garnishment of trustee).

have found that *Barton* applies to garnishments filed against a chapter 7 trustee during the pendency of a chapter 7 bankruptcy case. *See In re Logan*, No. 07-12564, 2010 WL 1286651, *2 (Bankr. E.D. Va. March 29, 2010) ("[G]arnishment is essentially a suit by the judgment creditor against the third party to enforce the execution lien. Enforcement of such a lien against funds held by a bankruptcy trustee, however, runs afoul of two bars. The first . . . is the automatic stay . . . . The second is the bar against suing a trustee except with the permission of the court that appointed him." (citing *Barton*.)); *see also In re Yatko*, 416 B.R. 193, 201 (Bankr. W.D.N.C. 2008) (although not specifically citing *Barton* or its progeny, finding that "[a] garnishment, attachment or supplemental proceeding against the bankruptcy trustee cannot be maintained without relief from the stay and/or prior leave of the appointing bankruptcy court."). One court, however, declined (in a footnote) to apply *Barton* to garnishment interrogatories issued on a chapter 13 trustee following dismissal of a case. *Friendly Fin. Discount Corp. v. Gaston*, Civ. Action. No. 07-2196, 2008 WL 4330467 *3 n.5 (W.D. La. Sep. 17, 2008) (finding in the context of a motion for sanctions and punitive damages by the trustee that *Barton* was inapplicable to garnishment interrogatories because they were not a "suit against the Trustee for actions taken or not taken by the Trustee."). Another court declined (also in a footnote) to extend *Barton* to a case in which a state child support enforcement division issued a levy on the trustee pursuant to state statute. *Commonwealth of Va. v. Baskin*, 581 B.R. at 167 n.4 (finding that § 1326(a)(2) preempts state levy statute and requires funds to be returned to debtor). The court in *Baskin* reasoned that *Barton* focuses on cases in which another court seeks to exercise jurisdiction over the trustee. Because the division issued a levy under state statute without resorting to any judicial proceeding or process, the court found that "no other court has attempted to obtain subject-matter jurisdiction over trustee." *Id.*

13

The Court believes the Fulton Garnishment Action falls squarely within the confines of *Barton*. In Georgia, "[a] garnishment proceeding is an action between the plaintiff and garnishee," garnishee in this case being the Trustee. O.C.G.A. § 18-4-15. When a trustee is served with a summons of garnishment, she is required to file an answer within 45 days. O.C.G.A. § 18-4-10 and 11. She must also pay funds subject to garnishment into the registry of the court within 45 days. *Id.* Failure to file a timely answer may result in a default judgment against a trustee in the amount outstanding on the plaintiff's underlying judgment against the debtor. O.C.G.A. § 18-4-22. The defendant (*i.e.*, debtor) may file a response to the trustee's answer. O.C.G.A. § 18-4-15. Plaintiff (*i.e.*, creditor) may file a traverse to the trustee's answer, which "places in issue all questions of law and fact concerning garnishee's answer." O.C.G.A. § 18-4-16. Any person may file a third-party claim asserting a superior claim to the funds held by the garnishee. O.C.G.A. § 18-4-17. Older judgments are given priority of payment of garnished funds where competing claims or garnishments are filed. O.C.G.A. § 18-4-18. Disputes are tried by the Georgia state court. O.C.G.A. § 18-4-19. While a trustee may seek costs incurred in answering a summons of garnishment, she is limited to $100 unless she petitions the Georgia court for her reasonable fees and expenses. O.C.G.A. § 18-4-14.

At least under Georgia law, as the above-cited provisions make clear, a garnishment filed against a trustee is a lawsuit in which a non-bankruptcy court attempts to assert jurisdiction over the trustee for the sole reason that she holds funds in connection with her official duties as trustee. Under those circumstances *Barton* clearly applies. The Court acknowledges that a garnishment is not the typical type of suit at issue in most *Barton* cases,[9] but the underlying reason courts apply

---

[9] Most *Barton* cases deal with negligence or even intentional tort claims against a trustee by unhappy debtors or creditors.

14

the *Barton* Doctrine to suits against bankruptcy trustees—to discourage burdensome lawsuits that interfere with trustees' ability to perform their duties—applies equally to garnishments, if not more so. Indeed, if *Barton* applies to suits for potentially negligent and even intentionally tortious acts done in the course of a trustee's duties, it should apply to lawsuits filed for no reason other than the perfectly competent performance of a trustee's most basic duties as estate fiduciary and officer of the bankruptcy court.

Some courts have found that the burden a garnishment or levy places on a trustee is not significant enough to merit concern. *See, e.g., In re Doherty*, 229 B.R. at 466; *In re Fischer*, No. 6:09–bk–07498, 2011 WL 613328 *1 (Bankr. M.D. Fla. Feb. 11, 2011); *see also In re Brickell,* 142 Fed. Appx. at 389 (no *per se* ban on garnishments if it does not unnecessarily complicate administration of the case[10]). The basic reasoning in these cases is that 1) nothing in the Bankruptcy Code or rules explicitly prevents garnishment of a trustee, 2) any administrative burden to the trustee is *de minimus* because the garnishment affects only to whom the trustee pays the money, and 3) there is no reason to treat trustees any different than any financial institution or employer that may be regularly subjected to garnishment proceedings.

To the first point, the Seventh Circuit pointed out that the *Barton* Doctrine appears nowhere in the Bankruptcy Code. *In re Linton*, 136 F.3d at 545. Notwithstanding that fact, the *Barton*

---

[10] *Brickell* is unpublished and therefore not binding on this Court. Further, the Court does not believe its ruling is at odds with *Brickell*. First, *Brickell* does not address *Barton* at all. Second, it was important that the trustee in *Brickell* had no objection to the garnishment, which is not the case here. Third, the court's finding in *Brickell* that there is no *per se* ban on garnishing a trustee was in response to case law stating that bankruptcy courts have no authority under any circumstance to allow garnishment against a trustee. In properly rejecting such cases, *Brickell* found garnishment may be allowed if it does not unnecessarily complicate administration of the estate. The Court today is not establishing a *per se* ban on garnishing trustees, only that leave of the bankruptcy court is required first. In this Court's view, the reasoning of *Brickell* is better served by requiring creditors to obtain permission from the bankruptcy court before filing a garnishment so that the bankruptcy court and trustee can determine whether the garnishment is likely to affect the administration of the estate instead of engaging in an *ex post* analysis after the garnishment may have already unnecessarily complicated estate administration.

15

Doctrine has been applied in bankruptcy cases in nearly every circuit. *See Carter v. Rogers*, 220 F.3d 1249 (11th Cir. 2000); *Villegas v. Schmidt*, 788 F.3d 156 (5th Cir. 2015); *McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012); *In re VistaCare Group, LLC*, 678 F.3d 218 (3d. Cir. 2012); *Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314 (6th Cir.2006); *Beck v. Fort James Corp. (In re Crown Vantage, Inc.),* 421 F.3d 963 (9th Cir. 2005); *Muratore v. Darr,* 375 F.3d 140 (1st Cir.2004); *In re Linton,* 136 F.3d 544, 546 (7th Cir.1998); *In re Lehal Realty Assocs.,* 101 F.3d 272 (2d Cir. 1996). Thus, the absence of an explicit ban on garnishments in the Bankruptcy Code is not determinative of whether garnishments are allowed without first obtaining leave of the bankruptcy court. Moreover, application of the *Barton* Doctrine does not establish a *per se* ban on garnishments against a trustee, it merely requires bankruptcy court approval before the garnishment may be filed.

To the second point, the Trustee argued at the Hearing that if she is subject to garnishment upon dismissal of every case, then it could create an extreme administrative burden on her and her office to respond to every garnishment proceeding. The Court agrees. Not only could the volume of garnishments become overwhelming given the substantial number of cases the Trustee administers that are dismissed each year, but disputes in garnishment proceedings between competing creditors or the debtor may arise, potentially leading to protracted disputes regarding disposition of funds in which the Trustee would be required to participate. Even more concerning, administrative creditors in the bankruptcy case often have claims to funds held by the Trustee that may have priority over any creditor in a garnishment action. Disputes regarding the extent and validity of such claims could be litigated in the bankruptcy court over a significant period of time while a garnishment action is proceeding in state court. While administrative claims in a

16

bankruptcy case likely preempt any claims of a garnishing creditor in state court,[11] the Trustee might often be required to defend such position in garnishment proceedings in the state court, while simultaneously litigating the administrative claims in bankruptcy court. In cases such as this one where the general "revesting" provisions of § 349(b) control who is entitled to funds held by the Trustee, the Trustee should not be required to litigate in garnishment proceedings to determine in whom such funds revest while simultaneously litigating in the bankruptcy court. It may be true that in any *single* case, the administrative burden to the Trustee is *likely* to be small, but that is certainly not guaranteed given the potential for conflicting claims to funds, litigation in the garnishment action, and competing litigation with potentially conflicting results involving the same funds in the bankruptcy case. Moreover, the small burden of one garnishment could quickly swell to a large burden of hundreds of garnishments if creditors are given the green light to file immediately upon the conclusion of every bankruptcy case.

To the third point, the *Barton* Doctrine is the reason to treat bankruptcy trustees differently than other entities that must regularly respond to garnishments. Perhaps more correctly, the underlying purpose of the *Barton* Doctrine is the reason:

> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.... Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees.

*Rogers*, 220 F.3d at 1253 (citing *Linton*, 136 F.3d at 545). Financial institutions and other entities regularly subjected to garnishment actions devote substantial resources responding to garnishments, but by their nature they are better equipped financially to handle that burden as a

---

[11] *See, e.g., Steenstra*, 307 B.R. at 738 ("the funds required to pay the administration expenses allowed by § 503(b) are protected from levy or garnishment").

17

cost of doing business. The Trustee, on the other hand, is not a traditional for-profit institution able to pass such costs on to its customers.[12] The Court is concerned primarily with the Trustee's ability to perform her duties as trustee, which should not include being caught up in state court lawsuits that, at best, cause a distraction to the Trustee's normal operations and, at worst, could lead to significant litigation, conflicting judgments regarding disposition of funds, and liability for the Trustee. As the court in *Shields* put it: "The Court is well aware that the Trustee carries a heavy chapter 13 caseload. The Trustee executes his duties superbly. The Court does not want this level of performance compromised by state court proceedings that divert the Trustee's attention." *In re Shields* 431 B.R. at 452.

The Court is aware of the Eleventh Circuit opinion in *U.S. v. Ruff*, 99 F.3d 1559 (11th Cir. 1995), in which a chapter 7 trustee was found to be personally liable for failing to comply with a notice of levy served on her by the IRS. In *Ruff*, the trustee hired a broker to sell certain assets of the estate. Between the closing of the sale and approval of the broker's fee by the bankruptcy court, the IRS issued a levy on the trustee for any funds she held that were owed to the broker. The trustee responded to the levy by indicating she held no funds owed to the broker because the bankruptcy court had not finally approved the broker's commission. The bankruptcy court subsequently approved the broker's commission, and the trustee paid the commission. The Eleventh Circuit affirmed the lower court's ruling that the trustee should have honored the levy by paying the broker's commission to the IRS. The opinion primarily examines whether the money held by the trustee post-closing but prior to the bankruptcy court's order approving the broker's commission was owed to the broker at the time the IRS issued the levy. There is no discussion of *Barton* or whether the Bankruptcy Code required the IRS to obtain stay relief or other leave of the

---

[12] Chapter 13 trustees' compensation is fixed by statute. *See* 28 U.S.C. § 586.

18

bankruptcy court before issuing the levy, and in any event *Ruff* is distinguishable. As noted above, *Barton* is jurisdictional and prevents a non-bankruptcy court from exercising jurisdiction over a trustee without leave of the bankruptcy court. As at least one court found, non-judicial levy by a government agency may not run afoul of *Barton* because no court is attempting to obtain subject matter jurisdiction over the trustee. *Commonwealth of Va. v. Baskin*, 581 B.R. at 167 n.4. To the extent *Ruff* involved a non-judicial levy by the IRS, it does not conflict with the Court's ruling today that garnishment proceedings under Georgia law, which unquestionably do involve a non-bankruptcy court exercising jurisdiction over the Trustee, violate *Barton*. The Court expresses no opinion on whether a non-judicial levy of the IRS or other government agencies might violate *Barton*.

Because the Fulton Garnishment Action was filed in violation of *Barton*, the Fulton County court obtained no jurisdiction over the Trustee, and the action is void with respect to the Trustee. The Court understood at the Hearing that Legacy intended to dismiss the Fulton Garnishment Action and any garnishment filed against Debtor's counsel. As such, and given Legacy's apparent approval of the Court's decision regarding the disbursement of the Funds to the Gwinnett Court, the Court need not address whether Legacy might have been authorized to file a garnishment had it properly requested leave to do so from the Court. Accordingly, as stated above, the Court expresses no opinion herein regarding the preemptive effect of §§ 1326(a)(2) and 349(b) or whether such provisions might preclude the Court's authorization of a garnishment against the Trustee if properly requested by a creditor. In such cases, however, the Court's paramount concern will be the efficient administration of the estate and preventing undue burden to the Trustee in final administration of the estate. If there is to be a race to the trustee upon dismissal of chapter 13 cases in this Court, the race must first run through this Court before pulling the Trustee to state court.

19

Creditors wishing to file and serve garnishment actions or other judicial attachment proceedings on the Trustee in this Court, whether before or after a case is dismissed, must seek leave of this Court before doing so.

Accordingly, it is

**ORDERED** that the Trustee shall disburse the Garnished Funds to the Gwinnett Court via check made payable to the appropriate department or division of the Gwinnett Court as that court may instruct the Trustee or as the Trustee otherwise determines.  It is further

**ORDERED** that Legacy, if it has not already done so, shall dismiss the Fulton Garnishment Action or any other garnishment or judicial action filed or served on or against the Trustee.

The Clerk is directed to serve a copy of this Order on the Trustee, the Debtor, counsel for the Debtor, counsel for Legacy, and all parties on the mailing matrix.

### END OF DOCUMENT